

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOANNA MORGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07 C 1741 |
| vs. | ) | |
| | ) | Magistrate Judge Schenkier |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

In this Social Security appeal, plaintiff Joanne Morgan seeks reversal and/or remand of the denial of her claim under Title II for Disability Insurance Benefits ("DIB") and under Title XVI for Supplemental Security Income ("SSI") payments for an alleged disability beginning January 15, 2004. Plaintiff applied for DIB and SSI on February 2, 2004 (Administrative Record ("R.") 82, 269), received initial denials on April 23, 2004 (R. 36, 273), requested reconsideration on April 28, 2004 (R. 41, 278), and received second denials on or around October 12, 2004 (R. 43, 278). On September 27, 2006, Plaintiff requested a hearing before an administrative law judge ("ALJ") (R. 33), and a hearing was held on October 17, 2006 (R. 282). The ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy; the ALJ therefore concluded that plaintiff was not disabled under the Social Security Act, 42 U.S.C. §§ 416(i)(1), 423(d) ("the Act"). Plaintiff requested review on November 20, 2006 (R. 9), and on February 7, 2007, the Appeals Councils denied plaintiff's request for review (R. 5), making the ALJ's decision the final decision of the Commissioner of Social Security ("the Commissioner"). *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008).

Plaintiff now has moved for summary judgment (doc. # 34). In her motion, plaintiff challenges the ALJ's findings at Steps Two and Three of the five-step analysis for determining disability under the Act, the ALJ'S determination of plaintiff's RFC, and his findings at Step Five. The Commissioner has cross-moved for summary judgment (doc. # 35), defending the ALJ's decision. For the reasons that follow, we deny plaintiff's motion for summary judgment, and we grant the Commissioner's motion for summary judgment.[1]

## I.

We begin with a discussion of the relevant evidence of record. We start with plaintiff's background and work history (Part A), followed by the medical evidence of her physical (Part B) and mental health (Part C) conditions, and then the evidence adduced at the hearing (Part D).

## A.

Plaintiff is female and was born on July 20, 1959, making her forty-seven years old at the time of the hearing (R. 288). She is 5'2" tall and weighs approximately 170 pounds (*Id.*). Plaintiff is twice divorced and has two children (R. 82-83). She lives with her son, who was twenty-six years old at the time of the hearing (R. 288). Plaintiff graduated from high school, attended one year of college, and obtained a certified nursing assistant certificate in 1978 (*Id.*). Plaintiff has previously worked as a file clerk in an insurance company (1995-1997), an assembly-line factory worker (1997-1998), a housekeeper in a hotel (1999 and 2003), a cook and cashier in a sandwich shop (2000-2002), and a home-care assistant (2003-2004) (R. 92). Plaintiff has not engaged in substantial work since January 15, 2004, the onset date of her alleged disability. Plaintiff claims disability due

---

[1]Pursuant to the consent of the parties and 28 U.S.C. § 636(c), on September 25, 2007, this case was assigned to this Court for all proceedings, including the entry of final judgment (doc. ## 18, 20).

to chronic pain in her back and legs, as well as anxiety, depression, and mood swings on a daily basis (R. 290-91).

## B.

Plaintiff produced medical evidence documenting a number of physical impairments. In late 1978, plaintiff suffered from Guillain-Barré Syndrome ("GBS"), a side-effect of a childhood polio vaccine, which caused severe paralysis (R. 247). She received hospitalization and treatment and recovered significantly (*id.*), but claims to have continued suffering resultant physical and mental limitations (R. 296). An undated school health record indicated slight hearing loss (R. 245), and another indicated severe hearing loss (R. 246). A psychological examination by Dr. Erwin Baukus, dated March 24, 2004, noted that plaintiff did not wear a hearing aid and responded to normal conversation level voice (R. 214).

Plaintiff has documented back disorders and pain. On December 5, 2005, plaintiff was treated at the Illinois Valley Community Hospital emergency room for a back spasm and was prescribed Vicodin to be taken twice daily (R. 238). Plaintiff received an MRI examination of the lumbar spine without contrast on April 18, 2006 (R. 242). The MRI report indicated disc bulges and degenerative changes of the L3 through S1 interverbral discs, but no disc herniation, central canal stenosis, or neural foraminal stenosis (*Id.*).[2]

On December 5, 2005, plaintiff suffered blunt trauma to her ankle when she was struck by a shopping cart at a grocery store (R. 247). On September 7, 2006, plaintiff was examined by Dr. Thomas Szymke, a specialist in rehabilitation medicine (R. 247). Dr. Szymke found that plaintiff

---

[2]Stenosis is defined as the constriction or narrowing of a passage or orifice. Donald Venes, *Tabers Cyclopedic Medical Dictionary* (20th ed. 2005).

suffered from chronic myofascial pain as a result of the incident. Dr. Szymke also reviewed plaintiff's MRI scan from April 18, 2006, noting significant schlerosis at L4-L5, L5-S1 in the facets. He found that the appearance of plaintiff's S1 joints was compatible with an osteitis condenses ilei.[3] Dr. Szymke further noted that plaintiff suffers from significant hypertension, hypothyroidism, and hypercholesterolemia, and very significant gastroesophageal reflux disease ("GERD") (*Id.*). Dr. Szymke also noted that plaintiff has definite persistent weakness in her right shoulder external rotators and her left ulnar intrinsics (R. 248).[4] Dr. Szymke also noted that plaintiff takes the following medications: Lotrel (5mg/10mg daily), Hydrochlorothiazide (12.5mg daily), Levothyroxine (25mg daily), Vytorin (10mg/20mg at night), and Zantac (300mg daily) (R. 247).

For treatment, Dr. Szymke prescribed an aggressive soft tissue mobilization program and prolonged stretch to address her myofascial pain (R. 248). Plaintiff does not use any assistive devices (R. 290).

## C.

Plaintiff also produced medical evidence documenting a number of mental and psychological impairments. On March 18, 2004, plaintiff received a one-hour psychological examination by Dr. Erwin Baukus (R. 213). Dr. Baukus diagnosed plaintiff as suffering from chronic major depression, with generalized anxiety (R. 217). Dr. Baukus also diagnosed plaintiff as suffering from alcohol dependence with ongoing use/abuse, and a history of cocaine use (*Id.*). Those diagnoses were based on plaintiff's history of prior treatment for alcohol dependence, and her statements to Dr. Baukus

---

[3]Condensing osteitis is inflammation of the bone in which the marrow cavity becomes filled with osseous tissue, causing the bone to become denser and heavier. Venes, *supra* note 1.

[4]The ulna is the inner and larger bone of the forearm, on the side opposite of the thumb. Venes, *supra* note 1.

regarding prior alcohol and drug use (R. 215, 217). Dr. Baukus reported that plaintiff told him that she was last intoxicated eight days before the examination and had last consumed alcohol two days before (R. 215). Dr. Baukus opined that plaintiff was intellectually able to manage funds on her own behalf, but "will most likely spend the funds on alcohol" (R. 218).

On April 12, 2004, plaintiff received a Disability Determination Services ("DDS") evaluation by state psychological consultant Dr. Carl Hermsmeyer (R. 219). Dr. Hermsmeyer evaluated plaintiff on the basis of regulatory Listing 12.04 for affective disorders and 12.06 for anxiety-related disorders (R. 227). Regarding the "B" criteria of the listing, Dr. Hermsmeyer found plaintiff to have mild limitations in activities of daily living, moderate limitations in maintaining social functioning, moderate limitations in maintaining concentration, persistence, or pace, and no episodes of decompensation (R. 229). Dr. Hermsmeyer further found that plaintiff did not meet the "C" criteria of either listing (R. 230). Finally, Dr. Hermsmeyer found plaintiff to have the mental functional capacity to perform simple tasks (R. 235). We note that the record shows no evidence that plaintiff ever received medication or treatment for her mental health conditions.

### D.

On October 17, 2006, ALJ Peter Caras held a hearing regarding plaintiffs claim for benefits (R. 282). Also testifying at the hearing were plaintiff's son, Jarod Mandrell (R. 297), and a vocational expert ("VE"), Dr. James Lanier (R . 298). Plaintiff was unrepresented at the hearing (R. 284). The ALJ explained plaintiff's right to an attorney, offered to give plaintiff phone numbers for local attorneys who would represent her on a contingency fee basis, and offered plaintiff the opportunity to reset the hearing date within eight weeks (R. 284-85). Plaintiff explained that she had

approached an attorney but was dissatisfied with his service, and had decided that she would just "do it myself because he wasn't even supporting me or even understanding my situation" (R. 286).

## 1.

At the hearing, plaintiff testified that she felt she was disabled partly due to chronic back pain, which radiated down both of her legs once per week, and which was aggravated by standing for too long or engaging in too much activity (R. 291-92). Plaintiff testified that she attended physical therapy twice a week for her back pain, and received medical examinations by Dr. Perales and Dr. Szymke (R. 291). She testified that she did not use any assistive devices (R. 290). Plaintiff testified that to help with her pain, she took Vicodin as needed (R. 290), over-the-counter medicine such as Ibuprofen and Alleve occasionally (R. 292), and tried to get in a comfortable position and stay there for awhile until the pain subsides (*Id.*).

Plaintiff further testified that she felt she was disabled because she had difficulty working with people and suffered from anxiety, depression, and mood swings on a daily basis, had difficulty rising in the morning, and had difficulty sleeping (R. 290, 292). She testified that she was not currently receiving treatment for her anxiety or depression (R. 290). Plaintiff testified that she read books and prayed to help with these conditions (R. 292).

Plaintiff testified that she had previously worked in housekeeping at hotels but could no longer push the cart (R. 289). Plaintiff testified that she had work experience as a cook and could still cook, but "can't go as fast as everybody else can" (R. 289). Regarding her daily activities, plaintiff testified that she attended yoga three times a week (R. 293), walked two to four blocks to the library (R. 294), read books, cooked, shopped for groceries, did laundry, and washed the dishes (R. 294-95).

6

**2.**

The ALJ asked if plaintiff had any information to add to the record, and plaintiff indicated that she did not (R. 297). The ALJ asked if plaintiff could produce a witness to provide further testimony, and plaintiff said she could not. Nonetheless, the ALJ asked if a witness could come forward to testify. Following this, plaintiff's son provided testimony ( *Id.*).

Plaintiff's son testified that he assisted plaintiff to carry heavy items and shop, and he helped her with household chores because she can't do much (R. 298). Her son testified that plaintiff got very anxious and, at times, she did not understand him fully in conversation (*Id.*). The ALJ asked plaintiff if she had questions for her son, and she answered that she did not (*Id.*).

**3.**

The VE testified last at the hearing (R. 298). The ALJ asked the VE to assume a hypothetical claimant aged forty-seven with a high-school diploma, limited to only light and sedentary work, occasional climbing, balancing, stooping, kneeling, crouching, crawling, and with occasional deficiencies of concentration and attention and limited to occasional interaction with coworkers, in public, and with supervisors (R. 299). The VE interpreted occasional to mean one-third of the workday (R. 300). The VE testified that with these limitations and restrictions, the hypothetical claimant could work in jobs including kitchen helper, janitor, and cleaner (*Id.*). The ALJ asked the VE to further assume sedentary work, with alternated sitting and standing every hour (R. 300). The VE testified that such claimant could work in the following jobs, which existed in the following numbers in Illinois: order clerk (933 jobs), messenger (896 jobs), material mover (2,004 jobs), and general office clerk (2,778 jobs) (*Id.*). The VE gave no indication that his testimony conflicted with

the job descriptions contained in the Dictionary of Occupational Titles, although the ALJ had invited him to identify a conflict if one existed (R. 298). Plaintiff did not cross-examine the VE (*Id.*).

**II.**

In a decision dated October 27, 2006, the ALJ concluded that plaintiff was not disabled and was not entitled to DIB or SSI (R. 31-32). At Step One, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date, and at Step Two, the ALJ found that plaintiff had a severe combination of impairments: "disorders of back, history of Guillain-Barré Syndrome, anxiety-related disorder, and affective disorder" (R. 26).

At Step Three, the ALJ determined that plaintiff's impairments did not meet or equal the criteria of Listing 1.04 for disorders of the back, Listing 12.04 for affective disorders, or Listing 12.06 for anxiety-related disorders (R. 26-28). The ALJ first stated that Listing 1.04 requires the claimant to have a:

> disorder of the spine resulting in compromise of a nerve root or the spinal cord with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test; or spinal arachnoiditis; or lumbar spinal stenosis leading to pseudoclaudication and resulting in an inability to ambulate effectively.

(R. 26). The ALJ referred to the MRI report, and pointed out that plaintiff had never been prescribed or used an assistive device. He concluded that plaintiff's back disorder neither met nor equaled Listing 1.04 (*Id.*).

The ALJ then discussed the showings required to satisfy Listings 12.04 and 12.06. The ALJ found that while plaintiff met certain of the criteria necessary to meet or equal those listings, plaintiff failed to satisfy others. He found that with respect to the "B" criteria, which required "marked"

8

restrictions or difficulties in daily living, social functioning, and maintaining concentration, persistence or pace, plaintiff had mild or at most moderate limitations (R. 27-28). Moreover, while the "B" criterion could be met by proof of "[r]epeated episodes of decompensation, each of extended duration," there was no evidence of any decompensation (R. 28.) The ALJ further explained that Criteria C requires:

> a medically documented history of a chronic mental disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: repeated episodes of decompensation, each of extended duration; or a residual disease process that has resulted in such marginal adjustment that even minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or current history of one or more years' inability to function outside a highly supportive living arrangement, with a continued need for such an arrangement.

(R.28). The ALJ found the record showed no evidence of decompensation, and on that basis found plaintiff failed to establish Criteria C necessary to a finding that her conditions met or equaled Listings 12.04 or 12.06 (*Id.*).[5]

The ALJ then determined that plaintiff had the RFC to perform sedentary exertional work, "with only occasional climbing, balancing, stooping, kneeling, crouching and crawling . . . [with] occasional deficiencies of concentration and attention, and . . . limited to occasional interaction with co-workers, public and supervisors" (R. 28). The ALJ referred to plaintiff's testimony that she had difficulty working with people, daily anxiety, depression, and mood swings, near-constant lower back pain with weekly lower extremity pain, difficulty sleeping, and an inability to stand for more

---

[5]The ALJ's statement as to the "C" criteria tracks the language of Listing 12.04. However, Criterion C of Listing 12.06 requires proof of a "complete inability to function independently outside the area of one's home," which is similar to the requirement in Criterion C.3 of Listing 12.04 that a claimant show the inability to function outside of a highly supportive living arrangement.

than two hours (R. 28-29). The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce these symptoms. The ALJ further noted that plaintiff testified that she was still able to work despite her impairments, that she did not use an assistive device, and that she was not undergoing treatment for her mental impairments. The ALJ found that in light of this evidence, plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible (R. 29).

The ALJ next referenced plaintiff's history of GBS, the December 2005 injury to her ankle, the evidence of her back spasms and her MRI report and its findings. The ALJ referenced Dr. Szymke's diagnoses of chronic myofacial pain and underlying advanced facet sclerosis, as well as his recommendation of an aggressive soft tissue mobilization program (R. 29). The ALJ concluded that claimant is able to engage in a number of activities despite her impairments, and articulated his physical RFC determination. The ALJ stated that there was no evidence that plaintiff would be physically incapable of sustaining work activity (*Id.*).

The ALJ then proceeded to determine plaintiff's mental RFC. The ALJ referred to the diagnosis by Dr. Baukus of alcohol dependence with ongoing use/abuse, history of cocaine abuse, and chronic major depression with generalized anxiety (R. 29). The ALJ noted Dr. Baukus's opinion that plaintiff's depression was directly related to her drinking. The ALJ recited the findings of the DDS assessment, and noted Dr. Hermsmeyer's conclusion that plaintiff had the ability to perform simple tasks (*Id.*). The ALJ also cited plaintiff's testimony that she was not undergoing treatment or taking any medication for a mental impairment, and had never been hospitalized for a mental impairment (R. 30). The ALJ stated that the fact plaintiff was able to read books and follow recipes for cooking indicated a higher level of functioning than found in the DDS assessment (*Id.*).

On the basis of this analysis of the record evidence, the ALJ found that plaintiff's affective and anxiety disorders caused only occasional deficiencies of concentration and attention. The ALJ limited the plaintiff to only occasional interaction with co-workers, public and supervisors. The ALJ stated that there was no credible evidence that plaintiff would be mentally incapable of sustaining work activity (R. 30).

Based on this RFC, the ALJ found at Step Four that plaintiff was unable to perform her past relevant work (R. 30). However, at Step Five, the ALJ found – based on the VE's testimony – that plaintiff could perform other work existing in significant numbers in the national economy (R. 31). The ALJ recited the standards for determining whether plaintiff could make a successful adjustment to other work. The ALJ noted that a finding of not disabled would be required if plaintiff were capable of performing a full range of sedentary work (R. 31). However, the ALJ accepted the VE's testimony that jobs existed in significant numbers in the economy that plaintiff could perform given her RFC (*Id.*). The ALJ further found that the VE's testimony concerning jobs plaintiff could perform was consistent with the information in the Dictionary of Occupational Titles (*Id.*). Accordingly, the ALJ concluded that a finding of not disabled was appropriate (*Id.*).

### III.

In deciding this appeal, we must affirm the Commissioners (in this case the ALJ'S) decision if it is supported by substantial evidence and based upon proper legal criteria. 42 U.S.C. § 405(g) (2004); *Ehrhart v. Sec'y of Health and Human Services*, 969 F.2d 534, 538 (7th Cir. 1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) (quoting *Dray v. Railroad Retirement Bd.*, 10 F.3d 1306, 1310 (7th Cir. 1993)). This Court may not decide facts

anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Id.* A finding may be supported by substantial evidence even if a reviewing court might have reached a different conclusion. *See Delgado v. Bowen*, 782 F.2d 79, 83 (7th Cir. 1986) (per curiam).

In order to determine whether substantial evidence supports the ALJ's decision, we must be able to "trace the path of the ALJ's reasoning." *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985). Therefore, we require the ALJ to construct a "logical bridge" between the evidence and his conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). This is a minimal, not maximal, articulation standard; the ALJ is not required to address every piece of evidence in writing. *Id.* However, the ALJ must explain his rejection of uncontradicted evidence that would support the claim for benefits, in order to overcome the inference that he did not reject the evidence but simply forgot it or thought it irrelevant. *Stephens*, 766 F.2d at 287. Accordingly, the opinion must show that the ALJ considered the evidence the law requires him to consider. *Id.* at 288.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A)(2004). A sequential five-step test is used to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520 (2004). The ALJ must determine: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimants impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) whether the claimant is unable to perform his past relevant work; and (5) whether the claimant is unable to perform any

other work existing in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *see also Young v. Secy of Health and Human Services*, 957 F.2d 386, 389 (7th Cir. 1992).

A finding of disability requires an affirmative answer at Steps Three or Five, whereas a negative answer at Steps One, Two, or Four will preclude a finding of disability. *Id.* Before considering Steps Four and Five, the Commissioner must assess the claimant's RFC. 20 C.F.R. § 404.1520(e); SSR 96-8p. The claimant bears the burden of proof at Steps One through Four, and the Commissioner bears the burden of proof at Step Five. *Young*, 957 F.2d at 389.

Plaintiff challenges the ALJ's analysis at Step Two, his findings at Step Three, the RFC determination,[6] and the hypothetical question posed to the VE at Step Five. For the foregoing reasons, we reject plaintiff's arguments and find that the ALJ's decision is supported by substantial evidence.

## A.

The ALJ, without discussion, found that plaintiff had a severe combination of impairments, consisting of "disorders of back, history of [GBS], anxiety-related disorder, and affective disorder" (R. 26). Not satisfied with that favorable finding, plaintiff argues that the ALJ'S failure to explain his finding or to discuss plaintiff's other conditions at Step Two fails the minimal articulation requirement, citing *Unger v. Barnhart*, 507 F.Supp.2d 929, 938 (N.D.Ill. 2007). Plaintiff also argues that this failure of articulation violated Social Security Ruling ("SSR") 96-3p. For these reasons, plaintiff argues that the Step Two finding constitutes reversible error (Pl.'s Mem. at 8-9). We find plaintiff's arguments unpersuasive.

---

[6]Plaintiffs characterization of the RFC determination as a Step Four finding is mistaken. The ALJ must determine RFC *before* Steps Four and Five, and must use the RFC assessment at these steps. *See* 20 C.F.R. § 404.1520(e); SSR 96-8p.

First, we consider *Unger* distinguishable. In *Unger*, the court remanded the case, in part as a result of the ALJ's failure to fully analyze plaintiff's conditions at Step Two – even though the ALJ made a finding in plaintiff's favor at Step Two. The ALJ had found that the plaintiff suffered from certain severe impairments, but had not analyzed evidence relating to other impairments at this step. *Unger*, 507 F. Supp. 2d at 938-39. Importantly, and unlike this case, the ALJ in *Unger* also stated at Step Two that he found no medical evidence of other impairments, and he additionally failed to account for the plaintiff's other impairments at subsequent steps. *Id.* at 939-40. Accordingly, the district court found that the ALJ had failed to consider all of the important evidence. *Id.* at 939.

While we agree that an omission at Step Two may be relevant to whether the ALJ has ignored a piece of evidence entirely, we have found no case that has been remanded solely on the basis of a Step Two determination that was favorable to a claimant, but cursory.[7] The minimal articulation standard does not require the ALJ to cite and discuss every piece of evidence at this threshold step, when the ALJ's finding was in plaintiff's favor. *See Clifford*, 227 F.3d at 872; *see also Maggard v. Apfel*, 167 F.3d 376, 378 (7th Cir. 1999) ("The first two steps involve threshold determinations"). We agree with other courts in our district which have held that "as long as the ALJ proceeds beyond step two, no error can result from that analysis." *Reynolds v. Barnhart*, No. 01 C 9620, 2003 WL 444275, at *13 (N.D.Ill. Feb. 24, 2003); *see also Lopez v. Sullivan*, No. 92 C 2828, 1993 WL 6641, at *7-*8 (N.D.Ill. Jan. 8, 1993).

---

[7]In another case, the district court remanded at Step Two, where the ALJ had found certain impairments to be severe but had failed to mention the plaintiff's other impairments. *Ridinger v. Astrue*, No. 06 C 5721, 2008 WL 5205669, at *6 (N.D.Ill. Nov. 24, 2008). The Court reasoned that remand was warranted, "[b]ecause the scope and severity of the impairments evaluated at Step Two *can impact* the ALJ'S equivalence determination at Step Three and his Residual Functional Capacity determination." *Id.* at *7 (emphasis added). Importantly, the *Ridinger* court also found errors at Step Three and in the RFC determination. *Id.* at *8, *9. As we explain below, we find no similar errors here.

*Second*, we are not persuaded by plaintiff's citation to SSR 96-3p. Plaintiff argues that this regulation requires the ALJ to perform an analysis at Step Two, rather than merely assert a conclusion. *See Prince v. Sullivan*, 933 F.2d 598, 602-3 (7th Cir. 1991) (Social Security Rulings are binding on the ALJ) (Pl.'s Mem. at 8). However, we read the regulation as undermining plaintiff's argument. SSR 96-3p states only that in order to be found disabled, a claimant must have a severe impairment; this regulation requires a "careful evaluation of all the medical findings" only when the ALJ is making a "determination that an individual's impairment(s) is *not* severe." SSR 96-3p (emphasis added). The regulation further states that if an impairment has "more than a minimal effect on an individual's ability to do basic work activities, the adjudicator must find that [it] is severe *and proceed to the next step in the process.*" *Id.* (emphasis added).

Finally, remanding on the basis of the ALJ's failure to be more expansive in his Step Two determination in plaintiff's favor would be pointless. A more extensive analysis by the ALJ at this step would not in itself alter the finding of no disability. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). As we find below, the ALJ properly considered the evidence of plaintiff's conditions at later steps of the sequential analysis. We therefore reject plaintiff's argument seeking reversal or remand based on the Step Two determination.

**B.**

Plaintiff challenges the ALJ's Step Three finding that her impairments did not meet or equal the criteria of disorders of the spine in Listing 1.04, affective disorders in Listing 12.04, or anxiety-related disorders in Listing 12.06. We reject plaintiff's arguments because we can trace the ALJ's reasoning and find his conclusions supported by substantial evidence.

**1.**

Listing 1.04 describes disorders of the spine. To show an impairment that meets or equals that listing, the record must show "evidence of nerve root compression . . .[,] spinal arachnoiditis, confirmed by . . . appropriate medically acceptable imaging, . . . [or] lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04. The ALJ correctly recited the requirements of the listing and assessed the findings in plaintiff's 2006 MRI report, which found disc bulges and degeneration, but no herniation or stenosis (R. 26). The ALJ also noted that the plaintiff had never been prescribed, and had never used, an assistive device (*Id.*).

Plaintiff asserts that the ALJ erred by failing to consider her other medically-determined impairments in determining whether she met or equaled Listing 1.04 (Pl.'s Mem. at 9-10). But, plaintiff has not pointed to any specific impairment that was ignored, or how it could affect the Listing 1.04 analysis. Because we can find no relevant evidence that was omitted by the ALJ, we are satisfied that his finding is supported by substantial evidence in the record.

**2.**

As for Listings 12.04 and 12.06, plaintiff argues that the ALJ simply adopted the conclusions of Dr. Hermsmeyer's mental evaluation, and ignored the testimony of plaintiff and her son (Pl.'s

Mem. at 10). The relevant criteria of both listings require a claimant to demonstrate at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04(C), 12.06(B).

The DDS psychological evaluation by Dr. Hermsmeyer found mild to moderate limitations in the first three criteria listed above in Listing 12.04, and no episodes of decompensation (R. 229). Although the ALJ ultimately agreed with this assessment, we do not find that he merely relied upon it. To the contrary, the ALJ discussed the hearing testimony before considering the DDS report, and recited plaintiff's own accounts of her ability to read, cook, visit the local library, shop, and engage in other activities (R. 27).

Quite apart from Dr. Hermsmeyer's opinion, the record contains no evidence showing episodes of decompensation; or a residual disease process that would make decompensation likely if there were even minimal increases in mental demands on plaintiff; or that plaintiff is in a "highly supportive" living arrangement or cannot function without one. Moreover, the ALJ was plainly correct in deciding that mild to moderate limitations fail to meet the threshold of "marked" limitations necessary to satisfy Listing 12.04(c)(1)-(3). *See* Listing 12.00(c) (stating that when the word marked "is used as a standard for measuring the degree of limitation, it means more than

moderate but less than extreme"). We find that the ALJ considered the evidence, and his finding was substantially supported by the record.[8]

### 3.

The regulations require a finding of equivalence for an impairment that is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). Plaintiff asserts that the ALJ failed to conduct an equivalence analysis for any of the listings (Pl.'s Mem. at 10). We disagree. The ALJ assessed all of plaintiffs relevant impairments, and found that they did not meet or equal the criteria of the listings (R. 28). We find no error in the ALJ's analysis.

### C.

Plaintiff argues that the ALJ's RFC determination failed to account for all of her medically determined impairments. RFC is defined as:

> [A]n administrative assessment of the extent to which an individuals medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.

SSR 96-8p. When determining a claimant's RFC, the ALJ must consider all the relevant evidence on the record. *Id.* Furthermore, the ALJ's RFC assessment must include a "narrative discussion describing how the evidence supports each conclusion." *Id.*; *see Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

In making his assessment in this case, the ALJ discussed plaintiff's impairments and her resulting functional limitations and restrictions. He considered plaintiff's history of GBS, disc

---

[8]We note that under Listing 12.06(C), a plaintiff may show – in lieu of two of the elements in Listing 12.06(B) – that she has a "complete inability to function independently outside the area of one's home." The evidence of record fails to establish that plaintiff here suffers from that inability.

degeneration, chronic myofacial pain resulting from blunt trauma suffered in 2005, and underlying advanced facet schlerosis. He further considered plaintiff's testimony of her ability to cook, go shopping, and walk to the local library (R. 28-29).

However, plaintiff argues that the ALJ failed to consider her weakness in her upper extremities, which was noted in the report by Dr. Szymke. We agree that the ALJ did not mention this specific impairment in his opinion; however, we do not find that he failed to consider it. The ALJ discussed Dr. Szymke's other findings and diagnoses that were interspersed throughout the same report (R. 29). We are satisfied that the ALJ considered this evidence and thus satisfied the minimal articulation standard, which we again emphasize does not require discussion of every discrete piece of evidence. *See Clifford*, 227 F.3d at 872.

Plaintiff points out that in his RFC analysis that the ALJ also did not mention plaintiff's hearing loss, HTN, hypothyroidism, hypocholesterolemia, and GERD (Pl.'s Mem. at 8). We recognize that the regulations require an ALJ to "consider limitations and restrictions imposed by all of an individuals impairments, even those that are not 'severe.'" SSR 96-8p. However, plaintiff has pointed to no evidence in the record showing that she is in any way limited or restricted by these conditions. Dr. Baukus noted in his report that, although plaintiff complained of bad hearing, she was able to respond to normal conversation level voice and did not use a hearing aid (R. 214). Dr. Szymke noted plaintiff's GERD and other gastric conditions, and stated that she takes medication for them (R. 247). There is no testimony or evidence regarding any functional limitations stemming from these conditions. Pursuant to the regulations, "when there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case

19

record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." SSR 96-8p.

Furthermore, we find that both the exertional and mental RFC determinations are supported by substantial evidence. The ALJ found that the plaintiff has the physical RFC to "engage in sedentary work activity with only occasional climbing, balancing, stooping, kneeling, crouching and crawling" (R. 29). Under the regulations, a sedentary RFC reflects "a significantly restricted range of work . . . [and] very serious functional limitations." SSR 96-9p. The ALJ noted that plaintiff does not use an assistive device, and is able to engage in a number of activities despite her impairments (*Id.*). We conclude that there was substantial evidence to support the ALJ's finding that plaintiff is able to sustain sedentary work activity.

Plaintiff criticizes the ALJ's mental RFC determination on the ground that he did not consider the impact of her major depression and other mental impairments but, instead, relied solely on the evaluations of Dr. Baukus and Dr. Hermsmeyer (Pl.'s Mem. at 10). We disagree. Although the ALJ recited the findings of both doctors (R. 29), he did not stop there. The ALJ also considered plaintiff's lack of treatment or medication for her mental impairments, and her ability to engage in complex tasks such as cooking and reading (R. 30). Indeed, the ALJ questioned Dr. Hermsmeyer's assessment that the plaintiff could perform only simple tasks, in light of her testimony about her activities.[9] On this basis, the ALJ found that plaintiff suffered occasional deficiencies of concentration and attention, and thus limited plaintiff's RFC to only occasional interaction with

---

[9]Because Dr. Hermsmeyer was a DDS consultant, the ALJ was required to consider his opinions, but was not bound by them. *See* 20 C.F.R. § 404.1527(f)(2)(I). The ALJ was permitted to give weight to Dr, Hermsmeyer's opinion "insofar as [it was] supported by evidence in the case record, considering . . . the consistency of the opinion with the record as a whole." SSR 96-6p. Accordingly, the ALJ was entitled to discount Dr. Hermsmeyer's assessment in light of plaintiff's testimony.

supervisors, co-workers, and the public (*Id.*). We find that the ALJ's RFC finding is supported by substantial evidence.[10]

## D.

Plaintiff argues that the ALJ'S Step Five determination was flawed because the hypothetical questions posed to the VE failed to address all of the evidence in the record (Pl.'s Mem. at 11). Hypothetical questions posed to a VE must include "*all* limitations supported by evidence in the record." *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) (emphasis in original). Plaintiff specifically argues that the questions were deficient because the underlying RFC determination failed to account for all of plaintiffs limitations. However, since we have found no errors in the ALJ's RFC determination, we reject plaintiff's argument.

## IV.

Plaintiff also asserts that she was unrepresented at trial, and the ALJ failed in his duty to sufficiently develop the record (Pl.'s Mem. at 11). It is true that the ALJ has a duty to develop a full and fair record in every case; and, this duty is enhanced when the claimant is not represented by counsel. *See Thompson v. Sullivan*, 933 F.2d 581, 585-86 (7th Cir. 1991). Under such circumstances, the ALJ must "scrupulously and conscientiously [ ] probe in to, inquire of, and explore for all the relevant facts." *Id.* (quoting *Smith v. Sec. of Health, Educ. & Welfare*, 587 F.2d 857, 860 (7th Cir. 1978)).

---

[10]We note that no agency examiner prepared a physical RFC assessment, although an examiner (Dr. Hermsmeyer) prepared a mental RFC and noted that an "RFC assessment [was] necessary" (R. 219). That said, plaintiff does not argue that the ALJ erred in failing to order a physical RFC – and, with good reason. The regulations do not mandate that such assessment by an agency examiner be made, and even when they are, those assessments are not binding on the ALJ. *See* 20 C.F.R. §§ 404.1527(e)(2), (f)(2)(1). Those regulations require that the ALJ "consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." We conclude that the record was sufficient to allow the ALJ to make the physical RFC finding, and provided substantial evidence to support the finding the ALJ made.

In order to warrant remand for an ALJ's failure to develop the record, a plaintiff must set forth specific relevant facts that were not considered. "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient." *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994). Recently, the Seventh Circuit found remand warranted where the ALJ had failed to fill an evidentiary gap spanning two years of relevant treatment history. *Nelms v. Astrue*, 553 F.3d 1093, 1098-99 (7th Cir. 2009). In that case, on administrative appeal, the plaintiff produced medical records from the relevant years, which the district court found would likely have convinced the ALJ to find the plaintiff disabled. *Id.* at *10-11. By contrast, in his case, plaintiff points to no evidence or specific facts that the ALJ failed to incorporate into the record. Furthermore, the record reveals that the ALJ affirmatively sought to elicit more information from plaintiff (R. 296), and sought additional information by asking plaintiff's son to testify on her behalf (R. 297).

Plaintiff argues that the ALJ should have better developed the record by further inquiring into plaintiff's weakness in her upper extremities, which was noted by Dr. Szymke (R. 248). However, plaintiff has not explained how further inquiry about plaintiff's weakness in her upper extremities would have altered the ALJ's conclusion that plaintiff had the RFC to perform sedentary work. *See Johnson v. Barnhart*, 449 F.3d 804, 808 (7th Cir. 2006) (declining to remand for consideration of evidence of a minor impairment that would have been "unlikely to change the [ALJ's] conclusion that [claimant] was not disabled from doing sedentary work"). Plaintiff also argues that the ALJ should have questioned the conclusions of Dr. Baukus, because his statements regarding plaintiff's alcohol abuse indicate a bias (R. 218). For this argument, plaintiff relies on Dr. Baukus's concluding remark that while plaintiff was able to manage her finances, she "will most likely spend the funds on alcohol" (*Id.*). We note that during the consultation, plaintiff had told Dr. Baukus of her history

of alcohol abuse, and stated that she had last been intoxicated eight days prior to the evaluation (R.

215). Even if we treat Dr. Baukus's remark as unwarranted or unkind, we find it an insufficient basis

to conclude that the ALJ therefore was barred from considering any aspect of Dr. Baukus's opinion

at all.

## CONCLUSION

For the reasons set forth above, we deny plaintiff's motion for summary judgment (doc. #

34), and we grant the Commissioner's motion for summary judgment (doc. # 35). This case is

terminated.

**ENTER:**

SIDNEY I. SCHENKIER
**United States Magistrate Judge**

**Dated: March 9, 2009**